David W. Wiltenburg (DW-0489)
Daniel S. Lubell (DL-7932)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
(212) 237-6000

Counsel for Standard Bank London Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| ENRON CREDITORS RECOVERY CORP., et al., | Case No. 01-16034 (AJG) |
| Reorganized Debtors. | (Jointly Administered) |

## NOTICE OF APPEAL

Pursuant to 28 U.S.C. § 158(a)(1), Standard Bank London Limited ("Standard Bank")

hereby appeals to the United States District Court for the Southern District of New York from (i)

the Order Granting Reorganized Debtors' Objection to Standard Bank of London, Limited's

Amended Proof of Claim No. 24626 (the "Order"), dated July 20, 2007 [Docket No. 31134]; and

(ii) the underlining Opinion Granting Reorganized Debtors' Objection To Standard Bank

London, Limited's Amended Proof Of Claim No. 24626 (the "Opinion"), dated June 13, 2007

[Docket No. 31065] entered in the above-referenced proceeding.  Copies of the Order and

Opinion are attached hereto respectively as Exhibits A and B.

The parties to this appeal and their respective counsel are identified hereto as:

**Appellant and Counsel**

**Standard Bank London Limited**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
Attn:   David W. Wiltenburg, Esq.
        Daniel S. Lubell, Esq.
     .

*Attorneys for Standard Bank London Limited*

**Appellees and Counsel**

**Enron Creditors Recovery Corp., et al., the Reorganized Debtors**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Attn:   Martin J. Bienenstock, Esq.
        Brian S. Rosen, Esq.
        Melanie Gray, Esq.

*Attorneys for Enron Creditors Recovery Corp., et al., the Reorganized Debtors*

       Standard Bank reserves the right to amend this Notice of Appeal.

Dated:  New York, New York
       July 30, 2007

                     Respectfully submitted,

                     HUGHES HUBBARD & REED LLP

                     By:/s/ Daniel S. Lubell_____
                        David W. Wiltenburg (DW-0489)
                        Daniel S. Lubell (DL-7932)
                        One Battery Park Plaza
                        New York, New York 10004-1482
                        (212) 837-6000

                        Counsel for Standard Bank London Limited

# EXHIBIT A

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Reorganized Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)
Melanie Gray (Pro Hac Vice)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                               :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **ENRON CREDITORS RECOVERY CORP.,** | : | **01-16034 (AJG)** |
| **f/k/a Enron Corp., et al.,** | : | |
| | : | **Jointly Administered** |
| **Reorganized Debtors.** | : | |

---------------------------------------------------------------- x

**ORDER GRANTING REORGANIZED DEBTORS' OBJECTION TO**
**STANDARD BANK OF LONDON, LIMITED'S AMENDED**
**PROOF OF CLAIM NO. 24626**

Upon consideration of the Reorganized Debtors' Objection to Claim

24626, dated February 9, 2005 (the "Objection");[1] and it appearing that good and

sufficient notices having been provided in accordance with this Court's Second Amended

Case Management Order Establish, Among Other Things, Noticing Electronic

Procedures, Hearing Dates, Independent Website and Alternative Methods of

Participation at Hearings, dated December 17, 2002, and Rule 3007 of the Federal Rules

of Bankruptcy Procedure, and it appearing that no other or further notice need be

provided; and the Court having reviewed the Objection and having heard the arguments

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the
Objection.

of counsel with respect to the Objection at a hearing on April 14, 2005 (the "Hearing");

and for the reasons set forth in the June 13, 2007 Opinion Granting Reorganized Debtors'

Objection to Standard Bank of London, Limited's Amended Proof of Claim No. 24626

(the "Opinion"); and the Court having determined that the legal and factual bases set

forth in the Objection and at the Hearing establish just cause for the relief granted herein;

and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefore:

It is:

ORDERED that the relief requested in the Objection is sustained and

granted in its entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, Claim

No. 24626 is hereby disallowed and expunged in its entirety.

Dated:  New York, New York

July 20, 2007

_____
HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT　　　　　For Publication
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
　　　　　　　　　　　　　　　　　　　　:
In re　　　　　　　　　　　　　　　　:　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　:
ENRON CREDITORS RECOVERY　　　　:　　　　Case No. 01-16034 (AJG)
CORP., *et. al.*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Reorganized Debtors.　:
　　　　　　　　　　　　　　　　　　　　:
-------------------------------------------------------

## OPINION GRANTING REORGANIZED DEBTORS' OBJECTION TO STANDARD BANK LONDON, LIMITED'S AMENDED PROOF OF CLAIM NO. 24626

**APPEARANCES**

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Reorganized Debtors
767 Fifth Avenue
New York, NY 10153

　　　　　　　Martin J. Bienenstock, Esq.
　　　　　　　Brian S. Rosen, Esq.
　　　　　　　Melanie Gray, Esq.
　　　　　　　　　Of Counsel

HUGHES HUBBARD & REED LLP
Attorneys for Standard Bank London, Limited
One Battery Park Plaza
New York, NY 10004

　　　　　　　David Wiltenburg, Esq.
　　　　　　　Daniel S. Lubell, Esq.
　　　　　　　　　Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

The issues before the Court are (1) whether Standard Bank London, Limited ("Standard") may amend its proof of claim ("Claim 13075") against Enron North America Corp. ("ENA") by an amended proof of claim ("Claim 24626") to include a specific claim against Enron Corp. ("Enron") for a guaranty that Enron executed, or, in the alternative, (2) whether Standard may file a late proof of claim against Enron, under a guaranty agreement, based on "excusable neglect." Upon consideration of the pleadings and arguments of the parties, the Court finds that Standard may not amend Claim 13075 to assert a claim against Enron. Further, the Court finds that Standard may not file a late proof of claim based on "excusable neglect."

## I. Jurisdiction

The Court has subject matter jurisdiction over this matter under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York. This is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code.

## II. Background

A. *General Procedural History*

Commencing December 2, 2001 (the "Petition Date"), Enron, ENA and certain of Enron's direct and indirect subsidiaries (collectively, the "Debtors" or "Debtor," referencing a single entity) each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases were procedurally consolidated for administrative purposes. During the chapter 11 cases, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On July 15, 2004, the Court entered an order confirming the

2

Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004, and the Debtors emerged from chapter 11 as reorganized debtors (the "Reorganized Debtors"). Effective March 1, 2007, Enron changed its name to Enron Creditors Recovery Corp. Thereafter, on April 4, 2007, an order was entered authorizing the change of the caption of the Reorganized Debtors' cases.

The Debtors filed "Motion of the Debtors for an Order Pursuant to Bankruptcy Rules 2002(a)(7), 2002(l), and 3003(c)(3) Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Providing Notice Thereof" on July 31, 2002 (the "Bar Date Notice Request"). The Bar Date Notice Request provided the following provision: "To avoid confusion and facilitate the Claims reconciliation process, the Debtors request that all creditors … be required to file separate Proofs of Claim with respect to each alleged claim and against each Debtor." By order dated August 1, 2002 (the "Bar Date Order"), the Court set October 15, 2002, as the bar date (the "Bar Date") by which proofs of claim must be filed against certain Debtors and approved the Bar Date Notice Request "in all respects." The Bar Date Order further provided that any creditor who fails to file a proof of claim in accordance with the Bar Date Order by October 15, 2002, "shall be forever barred, estopped and enjoined from asserting such claim against such Debtor (or filing a proof of claim with respect thereto) …." On August 10, 2002, the Debtors mailed, *inter alia*, the notice of the Bar Date to potential creditors of the Debtors, including Standard (the "Bar Date Notice").

B. *Standard's Claim 13075*

Prior to the petition date, Standard engaged in energy trading transactions with ENA. On September 25, 2000, Standard and ENA entered into a contract regarding swap transactions (the "Agreement"), pursuant to which Enron executed a guaranty (the "Guaranty") promising to

3

"guarantee[] the timely payment when due of the obligations of" ENA.  After ENA filed a

Chapter 11 case on December 2, 2001, Standard timely filed Claim 13075 against ENA,

asserting a claim in the amount of "not less than $2,040,630.71" allegedly owed to Standard

"under Swap Transaction ENA Contract No. NG1183.1 and the Revised Confirmation, Annex A,

Annex B, and Annex B-1 ...." Annex B-1 was an executed copy of the Guaranty, which

Standard attached to Claim 13075.  Standard, however, failed to file a separate proof of claim

against Enron based on the Guaranty.

Standard asserts that when it sought to sell its swap transaction claims under the

Agreement, it realized that it needed to file a separate proof of claim against Enron with regard to

the Guaranty claim.  Thereafter, Standard filed Claim 24626 against Enron on February 9, 2004.

As previously referenced, Standard labeled Claim 24626 as an amended claim to Claim 13075.[1]

On July 29, 2004, Enron filed its thirty-ninth omnibus objection.  In its objection, Enron

sought to disallow and expunge Claim 13075 due to its duplicative nature with Claim 24625 and

Claim 24626.  Enron did not object to allowing Claim 24626 to remain on file at that time.  In its

objection, however, Enron stated

> [t]his Objection is limited to the grounds stated herein.
> Accordingly, it is without prejudice to the rights of the Debtors or
> any other party in interest to object to the proofs of claims affected
> hereby on any ground whatsoever, and the Debtors expressly
> reserve all further substantive and/or procedural objections they
> may have.

The Court granted Enron's thirty-ninth omnibus objection on October 1, 2004.

---

[1] Standard filed Claim 24625 against ENA on February 9, 2004, as well, also labeling that claim as an amended
claim to Claim 13075.  No objection was filed regarding Claim 24625 and, therefore, Claim 24525 is not addressed
in this opinion.

On February 9, 2005, the Debtors filed an objection to Standard's Claim 24626, arguing that it was filed substantially after the Bar Date. Standard, who is represented by Hughes Hubbard & Reed LLP ("HHR"), asserts that it "did not direct HHR not to file a claim against Enron, but mistakenly directed HHR to file the claim based upon the entire [Agreement], which included the claim under the Enron Guaranty, against ENA." As such, Standard is claiming an inadvertent mistake on its part for not filing a timely proof of claim against Enron. Standard further contends that Claim 24626 should be allowed because Enron allowed a similar party, i.e. Kinder Morgan Interstate Gas Transmission, LLC ("Kinder Morgan"), to file a late claim when Kinder Morgan incorrectly filed its claim against ENA. Specifically, Kinder Morgan filed Claim 15271 against ENA on October 15, 2002. In its claim, Kinder Morgan stated

> Kinder Morgan, Inc. ("KMI") ... has an unsecured non-priority claim in the amount of $9,864,607 (plus all other fees, costs and applicable charges) against the referenced Debtor [i.e. Enron] as evidenced by Guaranty dated April 28, 2002 for transactions under ISDA Master Agreement dated April 28, 2002, between Enron North America Corp. and Kinder Morgan, Inc.

On May 20, 2004, Kinder Morgan and the Debtors entered into a Stipulation and Order Regarding Kinder Morgan, Inc.'s Motion to Allow Late Filed Claim or Alternatively, Motion for Leave to Amend Proof of Claim (the "Stipulation"). In the Stipulation, "[t]he Debtors and Kinder Morgan agree[d] that Proof of Claim No. 15271 should be deemed filed as against Enron ...." Standard contends that its situation is similar to Kinder Morgan's and that it should not be treated differently.

### III. Discussion

A. *Amendment of a Proof of Claim*

    1. *General Standards for Permitting A Post-Bar Date Amendment to a Timely Filed Proof of Claim*

5

Bankruptcy Rule 3003(c)(3) directs a bankruptcy court to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case. The bar date is critically important to the administration of a successful chapter 11 case for it is intended "to be a mechanism providing the debtor and its creditors with finality." *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 89 B.R. 358, 374 (Bankr. S.D.N.Y. 1988). A bar date order "'serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.'" *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (quoting *First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991)). The bar date, rather than serving merely as a procedural tool, is an integral part of the reorganization process. *Id.* (quoting *First Fidelity*, 937 F.2d at 840 (quoting *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 173 (5th Cir. 1991))).

The bankruptcy judge has the discretion to grant or deny an amendment to a timely filed proof of claim. *In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990). The bankruptcy court must take care that an amendment would truly amend a timely filed proof of claim rather than assert a new claim. *Maxwell Macmillan Realization Liquidating Trust v. Aboff (In re Macmillan)*, 186 B.R. 35, 49 (Bankr. S.D.N.Y. 1995). Courts apply a two-prong test to determine whether to permit amendment. *Integrated Resources, Inc. v. Ameritrust Co. N.A. (In re Integrated Resources, Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993) (citing *Associated Container Transp. (Australia) Ltd. v. Black & Geddes (In re Black & Geddes, Inc.)*, 58 B.R. 547, 553 (S.D.N.Y. 1983)). First, a court must determine whether there was a "'timely assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" *Id.* (quoting *Black &*

6

*Geddes, Inc.*, 58 B.R. at 553). If the first prong is satisfied, the court must then determine

whether it would be equitable to allow the amendment. *Id.* In balancing the equities the court

then examines each fact within the case and considers five equitable factors: (1) undue prejudice

to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether

other creditors would receive a windfall were the amendment not allowed; (4) whether other

claimants might be harmed or prejudiced; and (5) the justification for the inability to file the

amended claim at the time the original claim was filed. *Integrated Resources*, 547 B.R. at 70

(quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)). "The second

prong is to be applied only if the first prong is satisfied and the claim qualifies as an amendment

and not simply a new claim." *In re Sage-Dey, Inc.*, 170 B.R. 46 (Bankr. N.D.N.Y. 1994) (citing

*Integrated Resources*, 157 at 70).

　　　　2. *Application of Rule 15(c) of The Federal Rules of Civil Procedure*

　　　　As the Court discussed in *In re Enron Corp.*, 298 B.R. 513, 521 (Bankr. S.D.N.Y. 2003),

aff'd, *Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115 (2d

Cir. 2005),[2] neither the Bankruptcy Code nor the Bankruptcy Rules directly address amendment

of a proof of claim. However, in determining whether the first prong of the two-prong test is

satisfied, courts have applied Rule 15(c) of the Federal Rules of Civil Procedure ("Rule")

pursuant to Bankruptcy Rules 7015 and 9014(c), to analyze such an amendment. *Id.* (citing

*Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.)*, 220 B.R. 312, 315 (E.D.La. 1998));

*In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993); *Liddle v. Drexel Burnham Lambert*

---

[2] For the sake of clarification, the Court will refer to its decision in *In re Enron Corp.*, 298 B.R. 513 (Bankr. S.D.N.Y. 2003) as *In re Enron Corp.(Midland)*, 298 B.R. 513 (Bankr. S.D.N.Y. 2003), and will refer to the Second Circuit's affirmance of that decision, *Midland Cogeneration Venture Ltd. v. Enron Corp.(In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005), as *Midland.*

7

*Group, Inc.*, 159 B.R. 420, 425 (S.D.N.Y. 1993); *McLean Industries*, 121 B.R. at 710).[3]

Accordingly, the Court exercises its discretion under Bankruptcy Rule 9014(c) in applying by

analogy the standards of subsections (c)(2) and (c)(3) of Rule 15 to determine whether the

Guaranty claim relates back to Claim 13075 and whether Standard can assert Claim 13075

against Enron as a guaranty claim.  Rule 15(c) provides in pertinent part

> [a]n amendment of a pleading relates back to the date of the
> original pleading when ... (2) the claim or defense asserted in the
> amended pleading arose out of the conduct, transaction, or
> occurrence set forth or attempted to be set forth in the original
> pleading, or (3) the amendment changes the party or naming of the
> party against whom a claim is asserted if the foregoing provision
> (2) is satisfied and, within the [120-day] period provided by Rule
> 4(m) for service of the summons and complaint, the party to be
> brought in by amendment (A) has received such notice of the
> institution of the action that the party will not be prejudiced in
> maintaining a defense on the merits, and (B) knew or should have
> known that, but for a mistake concerning the identity of the proper
> party, the action would have been brought against the party.

After the statute of limitations has run (here, the Bar Date), Rule 15(c)(2) is used for amending

an original pleading (here, the proof of claim) to add a claim or defense, and Rule 15(c)(3)

applies for adding a new party (here, Enron).  Although Rule 15(c)(3) refers to changing a party

and does not directly address adding a party, the Court and others have liberally construed the

word "changes" to include adding a new party.  *In re Enron Corp. (Midland)*, 298 B.R. at 522.

Because Rule 15(c)(3) provides that the requirements of Rule 15(c)(2) must first be

satisfied, the Court will, as in *In re Enron Corp. (Midland)*, examine whether Standard can add

the Guaranty claim and Enron as a debtor to Claim 13075 under the criteria of Rule 15(c)(3).

---

[3] Bankruptcy Rule 7015 provides that Rule 15 applies in adversary proceedings and Bankruptcy Rule 9014 permits a [bankruptcy] court to extend Rule 7015 to contested matters as well as adversary proceedings. *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992) (citations omitted).

However, the Court will not extend the analysis by analogy to Rule 15(c)(3)'s criteria that notice must be provided to the newly-named party within the Rule 4(m) period.

The party asserting the relation-back, here, Standard, bears the burden of proof. *Randall's Island Family Golf Ctrs. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs.)*, 2002 WL 31496229, at *2, 2002 Bankr.Lexis 1247, at *6 (Bankr. S.D.N.Y. Nov. 8, 2002).

The first factor necessary to satisfy the first prong requires the claims asserted against the new party to comply with Rule 15(c)(2), in that they must arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *In re Enron Corp.* (*Midland*), 298 B.R. at 522 (citing Rule 15(c)(2)). The Court notes that the Guaranty executed by Standard and Enron specifically provides that it was entered into in regard to "swap, option or other financially-settled derivative transactions" of the parties. It provides that because Enron "will directly or indirectly benefit from the transactions to be entered into between [ENA] and [Standard]," and "in consideration of [Standard] entering into the Contract, [Enron]" agrees to "irrevocably and unconditionally guarantee[] the timely payment when due of the obligations of" ENA to Standard. While the Guaranty claim is a different cause of action from the underlying Agreement, courts have allowed parties to add another claim on amendment if it arises out of the same transaction or occurrence. *CIT Group v. Soly Srour (In re Soly Srour)*, 138 B.R. 413, 418 (Bankr. S.D.N.Y. 1992). Accordingly, the Court finds that the Guaranty claim does arise out of the same transaction or occurrence set forth in Claim 13075, that is, the Guaranty claim is related to the Agreement.

The second factor of the first prong requires that the party to be brought in by the amendment receive adequate "notice" of the institution of the action so the party will not be prejudiced in maintaining a defense on the merits. Aside from actual notice under the rule,

notice received by the original defendant may be imputed to the new defendant if there is an identity of interest between these two parties.  Under the identity of interest exception, "the institution of an action against once party will constitute imputed notice to a party subsequently named by an amendment of the pleading when the parties are closely related in their business activities or linked in their corporate structure." *Allbrand Appliance & Television Co. v. Caloric Corp. (In re Allbrand Appliance & Television Co.)*, 875 F.2d 1021, 1025 (2d Cir. 1989).  A "parent-subsidiary relationship standing alone is simply not enough . . . to establish the identity of interest exception to the relation back rule." *Id.*  Instead, courts have required "substantial structural and cultural identity, such as shared organizers, officers, directors, and offices." *Id.* Although the Guaranty claim was noted on Enron's schedules, such disclosure does not impute notice to Enron of the institution of this action, that is, Standard's filing of Claim 13075.  Nor does Standard's attachment of a copy of the Agreement and an executed copy of the Guaranty to Claim 13075 impute notice to Enron of the institution of this action.  The Bar Date Order sent to all creditors listed in Enron's Schedules, of which Standard was one, explicitly and unambiguously stated a creditor must file a separate proof of claim for each specific Enron entity that the creditor desired to hold liable.  Standard filed Claim 13075 in ENA's case and evidenced its intent to hold that particular entity liable.  Nonetheless, because Enron shared officers with its subsidiary, ENA, and the two entities were closely related in their business operations and other activities, the Court finds that notice of the assertion of the claim against ENA may be imputed to Enron that it was aware of the Claim 13075 based on Enron and ENA's identity of interest between the parties.

The third factor necessary to satisfy the first prong with respect to the amendment to Claim 13075 requires Standard to show that Enron "knew or should have known that, but for a

10

mistake concerning the identity of the proper party, the action would have been brought against it." *Id.* The Second Circuit has found that the "mistake" requirement "presupposes that in fact the reason for a [new defendant] not being named was a mistake in identity." *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994); *see also Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 987 (E.D. Pa. 1993) (stating that "the type of mistake with which Rule 15(c) is concerned" is a mistake "in identifying the party whom he wanted to sue"). The Court recognized in *In re Enron Corp.* (*Midland*) that a "mistake" under Rule 15(c)(3) is concerned primarily with the new party's awareness that failure to join it was error and not deliberate strategy, and depends on what the plaintiff knew about the identity and involvement of the added defendant when he filed the timely pleading.[4] *In re Enron Corp.* (*Midland*), 298 B.R. at 524. However, the Court found that, in spite of Midland's knowledge regarding Enron and its involvement in the matter, Midland's failure to name Enron was a mistake satisfying the first prong. In reading the *In re Enron Corp.* (*Midland*) opinion in preparing this opinion, the Court realizes that its previous conclusion, that a mistake - not involving the identity of the proper party - would satisfy the third factor of the first prong, was incorrect.[5] And though the failure to

---

[4] In a recent string of cases regarding motions for leave to amend a complaint, the Court has discussed that where the moving party knew or should have known of the identity or involvement of the party sought to be added, the requisite criteria of a mistake in identity for a Rule 15(c)(3) mistake was not established, regardless of whether the failure to name such party was not a strategic decision. *See* Opinion Granting Plaintiff's Motion for Leave to Amend its Complaint against Shizuoka Bank, Ltd., Shizugin TM Securities, Co. Ltd., and Merrill Lynch Tan-Chuki-Sai Fund (Adv. No. 03-92677, Docket No. 1419, Jan. 3, 2007); Opinion Denying Plaintiff's Motion for Leave to Supplement Its Pending Motion for Leave to Amend its Complaint to Add Bertholon Rowland as a Defendant (Adv. No. 03-92677, Docket No. 1415, December 21, 2006); *In re Enron Corp.* (Opinion Regarding Plaintiff's Motion for Leave to Amend Its Complaint Against Merrill Lynch Investment Managers Co., Ltd.), 361 B.R. 36 (Bankr. S.D.N.Y. 2006); *In re Enron Corp.* (Opinion Granting Plaintiff's Motion for Leave to Amend Its Complaint Against EarthLink, Inc.), 357 B.R. 257 (Bankr. S.D.N.Y. 2006); *In re Enron Corp.* (Opinion Denying Enron's Request for Relief Pursuant to Bankruptcy Rule 9023 Regarding Opinion Denying Motion for Leave to Amend Complaint to Add Lehman Brothers Japan, Inc.), 356 B.R. 343 (Bankr. S.D.N.Y. 2006).

[5] The Court notes that despite its error in that case, the request to amend the proof of claim, nevertheless, still would have been denied because of the Court's conclusion that the movant also failed to satisfy the second prong of the test. Moreover, in considering the appeal of the *Midland* decision, the District Court and the Second Circuit Court of Appeals did not address the Court's finding concerning the first prong of the test. (Apparently, the issue of the

name the entity may well be a "mistake," it nonetheless must be a mistake of identity to satisfy the first prong.

In the instant matter, Standard must show either factual mistake, such as misnaming or misidentifying a party it wished to sue, or legal mistake, such as misunderstanding the legal requirements of its cause of action, to establish the "mistake" under the third factor necessary to satisfy the first prong. *Thomas Rogers v. Sterling Foster & Co. (In re Sterling Foster & Co.)* 222 F.Supp.2d 216, 261 (E.D.N.Y. 2002). Here, Standard was aware of Enron's identity at the time it filed Claim 13075. Although Standard's failure to add Enron may qualify as a mistake, that is, actual inadvertence on the part of Standard and not a conscious choice or deliberate strategy to exclude Enron, that mistake was not one involving the identity of Enron, as required by Rule 15(c)(3). Therefore, the Court finds that Standard's amendment fails to satisfy the first prong of because the failure to name Enron in Claim 13075 was not based on a mistake the concerning identity of the party named in the proposed amendment.

Thus, as set forth in *In re Integrated Resources, Inc.*, 157 B.R. at 70, no further analysis under the two-prong test is necessary because Standard has failed to satisfy the requisite first prong. However, the Court will address the second prong for the sake of completeness. Even if the Court was to find that Standard satisfied the first prong, the Court concludes that the amendment should still not be permitted under the second prong based on an equitable determination. After considering the five equitable factors of the second prong, as mentioned above, the Court finds that a balancing of the equities favors the Debtors, not Standard. In

---

Court's finding regarding the first prong was not raised on appeal.) Rather, the appellate courts sustained the Court's denial of the right to amend based upon their conclusion that the second prong had not been established. Further, the Court notes that it reached a similar conclusion in an unpublished opinion, Opinion Denying Enterprise Products Operating L.P.'s Motion for Leave to Amend Proof of Claim, and Leave to File Late Proof of Claim (Case No. 01-16034, Docket No. 30807, February 23, 2007). Nonetheless, in that case, the Court's ultimate conclusion to deny the right to amend was also proper because the second prong had not been established.

particular, the Debtors would be unduly prejudiced due to the possibility of opening the

floodgates for other similarly situated creditors to come forward to amend their claims or file late

claims, and therefore, this factor weighs in favor of the Debtors.  The Court also finds that

although other creditors may receive an increased distribution if the amendment is not allowed,

such a distribution does not constitute a windfall, and therefore, this factor weighs in favor of the

Debtors.  Furthermore, the Court finds that the "prejudice to the Debtors" would also impede the

administration of the estate, thus causing harm and prejudice to other claimants, and therefore,

this factor weighs in favor of the Debtors.  In addition, the Court finds that Standard has failed to

provide any basis to support the argument that it was "unable" to file the amended claim at the

time the original claim was filed, and therefore, this equitable factor weighs in favor of the

Debtors.  The Court finds that there was no bad faith or dilatory behavior on the part of Standard,

and therefore, this factor weighs in favor of Standard.

Therefore, the Court finds that Standard has failed to establish that the balancing of the

equities favors the relief sought.  Therefore, the second prong of the two-prong test has not been

established.

In addition, Standard's reliance on *In re Hemingway Transp., Inc.*, 954 F.2d 1, 9-12 (1st

Cir. 1992) and *In re Interco Inc.*, 149 B.R. 934 (Bankr. E.D. Mo. 1993) is misplaced.  In

*Hemingway*, though the creditor was allowed to amend its claim where prior to a post-petition

contingency there was no value that could be reasonably ascribed to an indemnification

agreement, the court found there was no prejudice to other claimants in doing so.  *Hemingway*

954 F.2d at 10.

Though the creditor in *Interco* was allowed to amend an informal proof of claim when it

attached copies of guarantees by a co-debtor affiliate to a claim against one debtor arising out of

13

a lease agreement, the court found that the creditor had evidenced an intention to share in the

debtor's assets. *Interco*, 149 B.R. at 939. Claim 13075 does not qualify as an informal proof of

claim. To qualify as an informal proof of claim, a document purporting to evidence such claim

must have (1) been timely filed with the bankruptcy court and have become part of the judicial

record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the

estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt. *Houbigant,*

*Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995).

Assuming without deciding that Standard has met factors one through three, above, it has failed

to prove its intent to hold Enron liable for this debt. Standard claims that since Claim 13075

sought recovery "under Swap Transaction ENA Contract No. NG1183.1 and the Revised

Confirmation, Annex A, Annex B, and Annex B-1[,]" and since Annex B-1 was an executed

copy of the Guaranty made with Enron, it made its intention clear that it sought to hold Enron

liable. The Court disagrees. Merely referencing the agreement entered into with ENA and

labeling the Guaranty as Annex B-1 in Claim 13075 does not evidence an intention to hold

Enron liable for the debt.

Standard alternatively argues that since the Debtors allowed Kinder Morgan to file a late

claim against Enron, it should be allowed to do the same. Again, the Court disagrees. Although

Kinder Morgan mistakenly filed a proof of claim against ENA based on an Enron guaranty, the

body of Claim 15271 specifically expressed an intention to hold Enron liable for the debt.

Specifically, Claim 15271 stated: "Kinder Morgan, Inc. ... has an unsecured non-priority claim

in the amount of $9,864,607 ... against the referenced Debtor as evidenced by Guaranty dated

April 28, 2002 for transactions under ISDA Master Agreement dated April 28, 2002, between

[ENA] and Kinder Morgan, Inc." The fact that Enron entered into the Stipulation with Kinder

14

Morgan to allow its proof of claim yet refuses to allow Standard's Claim 24626 to remain does

not unfairly treat Standard differently from Kinder Morgan since Kinder Morgan's Claim 15271

expressly mentioned holding Enron liable under the Guaranty whereas Standard's Claim 13075

referred to its Guaranty with Enron merely as "Annex B-1."

Furthermore, with respect to Standard's argument that a ruling against Standard would be

inconsistent with the resolution of Claim 15271, the Court notes that the Stipulation between the

Debtor and Kinder Morgan is factually different from the instant matter because that Stipulation

involved more than just a single proof of claim.[6] The Stipulation between Enron and Kinder

Morgan involved both, claims of Kinder Morgan and claims of the affiliates of Kinder Morgan.

Thus, no such inconsistency exists because of the factual differences between the instant matter

and the Stipulation between Enron and Kinder Morgan, and disallowing Claim 24626 would not

result in unfair treatment to Standard.

Thus, Standard's remaining recourse for permitting the Guaranty claim is to establish its

failure to timely file a proof of claim for the Guaranty against Enron was the result of "excusable

neglect."

B. *Excusable Neglect*

Bankruptcy Rule 9006(b)(1) provides that a bankruptcy court in its discretion may accept

a late-filed proof of claim where a claimant establishes "excusable neglect." The burden is on

the claimant to prove that he or she did not timely file the claim because of "excusable neglect."

*In re Andover Togs, Inc.* 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999).

---

[6] The Court notes that even if both situations were factually similar, other considerations, including the then status of the case, may not have required a finding of inequitable conduct by the Debtors for refusing to resolve the dispute consistent with the Kinder Morgan settlement.

15

The seminal case interpreting the "excusable neglect" language of Bankruptcy Rule 9006(b)(1) is *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993). In permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388, 113 S.Ct. 1489 (quoting, in part, Bankruptcy Rule 9006(b)(1)). The Supreme Court further clarified that whether a claimant's neglect of a deadline is excusable is an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. *See id.* at 395, 113 S.Ct. 1489. These equitable considerations include (1) "the danger of prejudice to the debtor," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."

The relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party. *See Keene*, 188 B.R. at 909. As one bankruptcy court concluded, "no single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998).

Affirming *In re Enron Corp.* (*Midland*), the Second Circuit has clarified its position on *Pioneer's* four equitable factors noting that it has taken a "'hard line' in applying the Pioneer test." *Midland*, 419 F.3d at 122. Pursuant to its "hard line" approach, the Second Circuit

16

observed that "in the 'typical' case, 'three of the [*Pioneer*] factors' – the length of the delay, the danger of prejudice, and the movant's good faith – 'usually weigh in favor of the party seeking the extension.'" *Id.* (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), cert. denied sub nom. *Essef Corp. v. Silivanch*, 540 U.S. 1105, 157 L. Ed. 2d 890, 124 S. Ct. 1047 (2004)).  Therefore, the Second Circuit has "focused on the third factor: the reason for the delay, including whether it was in the reasonable control of the movant." *Id.* (quoting *Pioneer*, 507 U.S. at 395) (internal quotations omitted).  Under this approach, the "'equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule.'" *Id.* (quoting *Silivanch*, 333 F.3d at 366-67).

With *Pioneer's* four equitable factors in mind and the Second Circuit's clarification of their application, the Court turns to the facts of this case to determine if Standard's failure to file a timely proof of claim was caused by "excusable neglect."

1. *Danger of Prejudice to Debtors*

The Court in *Keene* noted that while *Pioneer* did not define "prejudice," subsequent cases have weighed a number of considerations in determining prejudice, including (1) the "size of the late claim in relation to the estate," (2) whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Keene*, 188 B.R. at 910.

Standard cites to *In re Sacred Heart Hosp.*, 186 B.R. 891 (Bankr. E.D. Pa. 1995), in support of its contention that when the debtor's plan is a liquidating plan, a court's allowance of a late proof of claim will not prejudice the debtor.  In that case, the court held that the debtor would suffer no prejudice largely because the debtor's plan was a liquidating plan. *Id.* at 897.

17

The court found "the issue of prejudice to the Debtor as a result of the late filing" to be "the primary consideration which must be made in the Pioneer analysis," thereby going "a long way towards winning the day" for the creditor. *Id.* As a result, the court granted an extension of the bar date to allow the creditor to file a proof of claim. *Id.* at 898. Standard also cites to *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 737-40 (5th Cir. 1995), as further support of its position that a late-filed proof of claim will cause no or little prejudice to the Debtors. The *Eagle Bus* court also uses prejudice as "the central inquiry" in its *Pioneer* analysis. *Id.* at 737.

Contrary to both of the above decisions, the Second Circuit has recently determined that the primary consideration in conducting the *Pioneer* analysis is the "reason for the delay," including whether it was within the reasonable control of the movant. *Midland*, 419 F.3d at 122. Moreover, in *Keene*, the Court cited to the *Sacred Heart* and *Eagle Bus* decisions and "question[ed] the wisdom of an approach under which the court must ultimately ignore the creditor's culpability and permit the filing of a[] late claim if prejudice is absent." 188 B.R. at 909. The Court agrees with the analysis in *Keene* and does not find these cases to Standard's advantage. Instead, the Court comes to the same the conclusion it reached in *In re Enron Corp.* (*Midland*).

Although Standard's Guaranty claim is not substantial in relation to the Debtors' estate when it stands alone, the Court nevertheless finds that prejudice to the Debtors would be significant in the instant matter if Standard's late-filed Guaranty claim is allowed. Standard's Guaranty claim was filed before the Debtors filed their Supplemental Modified Fifth Amended Joint Plan, but after the Debtors filed their initial disclosure statement, which was approved by the Court on January 9, 2004, and the amended disclosure statement, which was filed on January

12, 2004. Thus, based on the considerations set forth in *Keene*, the cumulative effect of allowing Standard's late-filed guaranty claim, when viewed at the time of the late-filed claim, may well have resulted in a flood of similar late-filed guaranty claims, which would have disrupted the economic model upon which the plan was formulated and negotiated. Specifically, the Court agrees with the Debtors that considering the Debtors might be parties to agreements with guarantees or guarantors of such agreements involving other Debtors, allowing late-filed proof of claims based on such guarantee or guarantor relationships would adversely affect the Debtors' assessment of their liabilities as well as negatively impact their bankruptcy proceedings. The Court, therefore, finds that the prejudice factor weighs in favor of the Debtors.

Standard argues that its case differs from that in *In re Enron Corp.* (*Midland*) because that creditor failed to include even an unsigned copy of a guarantee to its proof of claim against ENA whereas Standard attached an executed copy of the Guaranty to Claim 13075. As discussed above, while the inclusion of the Guaranty may demonstrate that Enron was aware of the existence of the Guaranty, merely referencing the agreement entered into with ENA and labeling the Guaranty as Annex B-1 in Claim 13075 does not evidence an intention to hold Enron liable for the debt, and thus, does not transform Claim 13075 into a timely-asserted guaranty claim.

Standard argues that while allowing the claim in *In re Enron Corp.* (*Midland*) presented an "unquantifiable risk of a flood of late-filed guarantee claims," the instant matter does not present such a risk because "the number of creditors who timely asserted a guarantee claim by including a copy of the Guaranty in the proof of claim is limited." However, the Court finds

19

here, as it found in *In re Enron Corp.* (*Midland*), that a proof of claim, filed more than 15 months

after the Bar Date, will present an "unquantifiable risk of a flood of late-filed guarantee claims."[7]

In addition, despite Standard's claim to the contrary, the Court finds, as it has previously

stated, that "[i]t can be presumed in a case of this size with tens of thousands of filed claims,

there are other similarly-situated potential claimants … . Any deluge of motions seeking similar

relief would prejudice the Debtors' reorganization process." *In re Enron Corp. et. al.*, Case No.

01-16034, Memorandum Decision and Order Denying P.P.C. Industries' Motion to Permit a

Late-Filed Proof of Claim Due to Excusable Neglect at 10 (Bankr. S.D.N.Y. April 8, 2003,

Docket No. 10121).

The Court, therefore, finds that the prejudice factor weighs in favor of the Debtors.

2. *Length of Delay and its Potential Impact on Judicial Proceedings*

The Court finds that the length of delay in filing the proof of claim here is substantial,

that is, it was filed more than 15 months after the Bar Date, which is far greater than the

circumstances of *In re Enron Corp.* (*Midland*), where the Court found that a delay in filing a

proof of claim of more than six months after the bar date was substantial. *In re Enron Corp.*

(*Midland*), 298 B.R. at 526. Again, the Court reiterates the conclusion it reached in *In re Enron*

*Corp.* (*Midland*)

> The Court . . . notes that the Bar Date Order was meant to function
> as a statute of limitations and effectively exclude such late claims
> in order to provide the Debtors and their creditors with finality to
> the claims process and permit the Debtors to make swift
> contributions under any confirmed plan of reorganization. To find

---

[7] Even if the Court were to assess the risk of a flood of late-filed guarantee claims at the time the Debtors objected to Claim 24626, although that risk may be somewhat lesser than at the time Claim 24626 was filed, a substantial risk would still exist. Furthermore, although the claim adjudication process is now much further along and the likelihood of "opening the floodgates for similar late-filed guaranty claims" may have further been reduced from the filing date of Claim 24626, nonetheless, under the circumstances of Enron and the numerous guaranty agreements, the Court finds that the possibility of opening the "floodgates" still exists such that a relaxed standard, as requested by Standard, could disrupt the Debtors' administration of the case.

> otherwise, that is outside the context of excusable neglect, would
> vitiate the very purpose of the Bar Date Order and would clearly
> prejudice the Debtors' reorganization process.

*In re Enron Corp. (Midland),* 298 B.R. at 526. Therefore, the length of delay also weighs in

favor of the Debtors.

   3. *Reason for Delay, Including Whether it Was Within Reasonable Control of Movant*

   While *Pioneer* recognized that courts are "permitted, where appropriate, to accept late

filings caused by inadvertence," a creditor nonetheless must explain the circumstances

surrounding the delay in order to supply the Court with sufficient context to fully and adequately

address the reason for delay factor and the ultimate determination of whether equities support the

conclusion of excusable neglect. *Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489. Standard claims that

it "did not direct HHR not to file a claim against Enron, but mistakenly directed HHR to file the

claim based upon the entire [Agreement], which included the claim under the Enron Guaranty,

against ENA." As such, Standard is claiming an inadvertent mistake on its part for not filing a

timely proof of claim against Enron. Standard makes no attempt to explain what lead to its error

of incorrectly directing counsel. The Debtors provided Standard with adequate notice of the Bar

Date. Standard knew it had an agreement with ENA and a guaranty agreement with Enron.

Therefore, the Court finds that it was within Standard's control to timely file a proof of claim for

the Guaranty against Enron. Accordingly, the Court finds this factor also favors the Debtors.

   *4. Whether Movant Acted in Good Faith*

   The Court finds that there is no indication in the record that Standard acted in a manner

other than in good faith in seeking to file this proof of claim. Therefore, this factor favors

Standard.

Although Standard acted in good faith, the remaining *Pioneer* factors, the danger of prejudice to the Debtors, the length of delay and its impact on the judicial proceedings, and the reason for the delay, all weigh strongly in favor of the Debtor in not permitting Standard leave to file a late proof of claim against Enron for the Guaranty. Therefore, the relief sought by Standard to file a late proof of claim under "excusable neglect" is denied.

### IV. Conclusion

The Court concludes that Standard's amendment to the Proof of Claim seeking to add Enron as a debtor and include the Guaranty claim fails under both prongs of the two-prong test for determining whether to permit amendment because there has been no mistake in identity and the balancing of the equities favors the Debtors, not Standard. Further, the attachment of the executed Guaranty to the Proof of Claim in ENA's case did not constitute an informal proof of claim or sufficiently provide notice to Enron that Standard intended to hold it liable for the Guaranty claim.

The Court also concludes that while Standard acted in good faith, the remaining *Pioneer* factors, including danger of prejudice to the Debtors, the length of delay and its impact on the judicial proceedings, and the reason for the delay, all weigh in favor of the Debtors in not permitting Standard leave to file a late proof of claim against Enron for the Guaranty. Therefore, the motion by Standard is denied in all respects.

The Debtors are to settle an order consistent with this opinion.

Dated: New York, New York
      June 13, 2007

                                      **s/Arthur J. Gonzalez**
                                      UNITED STATES BANKRUPTCY JUDGE